**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 23-190** |
| **v.** | * | **SECTION: "H"(5)** |
| **KENNETH G. AKPIEYI, *et al.*** | * | |

* * *

**GOVERNMENT'S SENTENCING MEMORANDUM FOR DEFENDANT KENNETH G. AKPIEYI**

The United States of America, through the undersigned Assistant United States Attorney, submits this memorandum in advance of the sentencing of Kenneth G. Akpieyi.

## I. Loss Amount.

When calculating loss amount for the purposes of U.S.S.G. § 2B1.1, "[t]he court need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 app. n.3(B) (2025). "The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence." U.S.S.G. § 2B1.1 app. n.3(B) (citing 18 U.S.C. § 3742(e) and (f)); *see United States v. Holbrook*, 499 F.3d 466, 468 (5th Cir. 2007) (quoting § 2B1.1 commentary that the court "need only make a reasonable estimate of the loss.").

The government has provided Exhibit A, attached to this memorandum, which provides several calculations for the loss amount for the 32 known victims who have been successfully contacted by the FBI. The columns represent the following:

- **Victim Initials:** initials of known victims.
- **Victim Interview:** loss amount provided by the victims during interviews with FBI.

- **Victim Testimony at Trial:** loss amount provided by victims during trial testimony.
- **Victim Impact Statement/Declaration of Victim Losses:** loss amount reported by known victims in victim impact statements or declaration of victim loss submitted with Akpieyi's PSR.
- **Total A – Overall Loss Low Estimate:** this is the total loss amount based upon the lowest loss number reported by each known victim. This total is $9,614,335.50.
- **Total B – Overall Loss High Estimate:** this is the total loss amount based upon the highest loss number reported by each known victim. This total is $10,992,360.00.
- **Total C – FBI Traced Known Victim Funds to Accounts held by Akpieyi, KGA, Phillip Anderson, Hall, Keniye, Le Beau Monde, and mailed cash:** these are the funds from known victims that could be traced by the FBI to bank accounts controlled by Akpieyi, Hall, and Keniye. This total includes mailed cash that could be corroborated by documentation, such as receipts for mailing or bank records. These traced funds total $2,191,036.50.

The government has previously submitted a total loss number of $9,668,860.00, which was based upon interviews of victims. However, several victims testified at trial that their losses were slightly lower, and some victim declarations similarly had lower loss amounts. This resulted in the reduced Total A (Low Estimate) of $9,614,335.50.

The government submits that the Total A (Low Estimate) is a reasonable estimate of the loss amount in this case. This is the lower of the two estimates based upon victim interviews,

testimony, and victim impact/declaration of losses; therefore, it is favorable to the defendant. Furthermore, the FBI has confirmed at least some of the losses for each of these victims. Indeed, losses from every one of these 32 known victims has been confirmed through forensic accounting.

The government also has provided Total C (Traced Known Victim Funds), which totals $2,191,036.50. This amount represents traced proceeds from victims into the accounts associated with Akpieyi, Emuobosan Hall, or Eseoghene Keniye. Although this amount represents actual tracing, the government submits that this loss amount underrepresents the loss amount. First, victims testified that they were instructed to send money to people *other* than Akpieyi, "Phillip Anderson," KGA Autobrokers, Le Beau Monde, Hall, or Keniye. For example, victim Bonnie Miller was instructed by "Dr. Mark Kelly" to send money to Moreland Motorsports, LLC; Fox Consulting, Inc.; and JBM Exports LLC in addition to KGA Autobrokers. G030-01, pp. 8-9. The government's Total C (Traced Known Victim Funds) does not include funds sent to people other than Akpieyi, Hall, or Keniye or their aliases.

Second, the nature of this conspiracy renders loss-tracing difficult. The government subpoenaed roughly 200 bank accounts in this investigation. This included victim accounts to trace funds from the victims to the perpetrators. The resulting records showed victim funds flowing through at least 30 accounts and eventually travelling overseas. Despite the FBI's efforts, victims' records showed that there were checks written to other people that victims reported as fraud, but the voluminous nature of this case did not permit every check to be traced. Furthermore, victims reported buying money orders, gift cards, bitcoin, mailing cash, and other methods of transferring currency that do not generate receipts or other records. Victims also stated they would purchase goods, such as cell phones, suitcases, and clothing, that they would

mail at the direction of their purported romantic partner. This conspiracy was an expansive one, both in membership and in its methodology, making it difficult to trace every stolen dollar.

Finally, Akpieyi likely received funds from many more victims who are *not* included in any of these totals. The bank records for KGA Autobrokers and "Phillip Anderson" contain many more deposits of money orders, cashier's checks, and personal checks that follow the same pattern. As the Court is aware, Akpieyi used accounts in the name of "Phillip Anderson" and KGA Autobrokers—an automobile sales business that reported zero income—to launder funds. *See* G007-15, G007-16, G007-17, G007-18 (Akpieyi tax returns seized from his residence). The government's three totals (Total A, Total B, and Total C) only include these losses from the 32 known victims.

However, the losses do not end with these 32 known victims. Account records show that there are various other individuals who sent money to "Anderson" or KGA Autobrokers, and Akpieyi deposited this money into his account. For example, in the "Anderson" account at Bank of America, Akpieyi deposited checks from additional victims from New York, Tennessee, and Oklahoma. G014-03, p. 7 ($2,780 cashier's check from Astoria, New York), p. 11 ($1,700 personal check from Tennessee), pp. 17-30 ($3,000 in money orders from Oklahoma). Another two $1,000 money orders were sent from a woman to "Phillip Anderson," but they both have the notation "Re: Tom Raymond," suggesting that she was directed to send money to "Anderson" to help her purported romantic partner. G014-03, p. 71-74. The government's totals (Total A, Total B, and Total C) only include known victims and do not include these other individuals who fit the pattern of the fraud.

Based on the foregoing, the Court can reasonably estimate that the actual losses caused by Akpieyi is at least $9,614,335.50.

**II. Seriousness of the offense and deterrence merit a substantial sentence.**

The § 3553 factors require the Court, when fashioning a sentence, to consider the seriousness of Akpieyi's offense, the need for deterrence, protection of the public, the defendant's criminal history and characteristics, and the need to promote respect for the law. *See* 18 U.S.C. § 3553(a). The government submits that two factors merit particular consideration: the seriousness of this offense and the need for deterrence.

First, Akpieyi's offense was a serious one. It had a massive impact: the victims have all suffered some financial impairment at a later point in their lives, when it is more difficult to earn money and repair the damage. For some, their financial injury is even more serious—they cannot retire, they have to re-enter the workforce, and they need to sell property. Akpieyi was a crucial chokepoint in this conspiracy: had he not deposited the victims' checks, this scheme would not have succeeded. Instead, Akpieyi turned a blind eye to the people he harmed. As he stated at trial, he believed his "clients" were the people in Africa who told him to anticipate a check. The fact that the checks that landed in his mailbox were *not* from Africa did not affect Akpieyi.

The Court should also consider the need for deterrence. Akpieyi merits a substantial sentence because his first arrest in this case—at a Chase Bank in Marietta, Georgia—did not deter him. That arrest on June 27, 2023, while in possession of a false "Phillip Anderson" driver's license should have prompted him to end his role in this conspiracy. Nevertheless, Akpieyi continued perpetrating the scheme to defraud, such as by sending victim funds to Denver Links Express and codefendant Hall in July 2023. *See* G033-10. He also took the funds from the "Phillip Anderson" Chase Bank account and deposited them in a Truist account under "KGA Autobrokers," only to have the funds frozen by law enforcement. *See* G033-03. Akpieyi's continued criminal activity after his arrest weighs in favor of a substantial sentence. *See United*

*States v. Mays*, 852 F. App'x 801, 807 (5th Cir. 2021) (finding no abuse of discretion where district court varied upward for defendant who, "after he was removed as custodian, [] cashed an $8,900 check that should have been turned over to the new custodian—a fact that the district court specifically relied on as a reason to vary upward."). Furthermore, "§ 3553(a) considers general deterrence directed to the public at large, not just specific deterrence directed to the particular defendant." *Id.* Sophisticated frauds, like romance scams, are particularly difficult to detect. At trial, the jury saw evidence of various actors, both in the United States and abroad, who may never face charges. The Court should fashion a sentence that provides deterrence to others who would engage in these complex schemes to defraud.

Respectfully submitted,

DAVID I. COURCELLE
UNITED STATES ATTORNEY

*<u>/s/ Matthew R. Payne</u>*
MATTHEW R. PAYNE
Assistant United States Attorney
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3081
E-Mail: Matthew.Payne@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 15th day of January 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to ECF-registered counsel of record

*<u>/s/ Matthew R. Payne</u>*
MATTHEW R. PAYNE
Assistant United States Attorney